PHILIP LA RUSSA, NILO LIMA, TONY RODRIGUEZ and LOUIS NUNEZ, v. STATE.

196 So. 302
En Banc
Opinion Filed March 29, 1940
On Rehearing June 4, 1940

*Whitaker Brothers,* for Plaintiffs in Error;

*George Couper Gibbs,* Attorney General, and *Thomas J. Ellis,* Assistant Attorney General, for Defendant in Error.

BROWN, J.—In January, 1939, the county solicitor for Hillsborough County filed an information against the plain-

tiffs in error, hereinafter called the defendants, charging them with the crimes of (1) printing lottery tickets, (2) setting up type for the printing of lottery tickets, and (3) knowingly permitting the printing and publishing of lottery tickets on their premises. Defendants immediately presented their petition for writ of *habeas corpus* and the same was granted. The writ set out that the defendants were not charged with a crime. A return was filed and the prisoners were brought before the court. After a hearing on the writ they were remanded to the custody of the sheriff. Writ of error was taken from this Court to the order remanding defendants to custody.

The information was drawn pursuant to Section 2, Chapter 4373, Acts of 1895 (Section 7668, C. G. L. 1927), which provides:

"PRINTING LOTTERY TICKETS, etc., PROHIBITED.—It shall be unlawful for any person, firm or corporation, in any house, office, shop or building in this State to write, typewrite, print, or publish any lottery ticket or advertisement, circular, bill, poster, pamphlet, list or schedule, announcement or notice, of any lottery prizes or drawings *or* any other matter or thing in any way connected with any lottery drawing, scheme or device, or to set up any type or plate for any such purpose, to be used or distributed in this State, or to be sent out of this State; and it shall be unlawful for the owner or lessee of any such house, shop or building knowingly to permit the printing, typewriting, writing or publishing therein of any such lottery ticket or advertisement, circular, bill, poster, pamphlet, list or schedule, announce or notice of lottery prizes or drawings or any other matter or thing in any way connected with any lottery drawing, scheme or device, or knowingly to permit therein the setting up of any type or plate for any such

purpose to be used or distributed in this State, or to be sent out of the State." (Emphasis added.)

The information contained three counts. The first charged that the defendants "did write, print and publish lottery tickets and blank tickets, which are a part of the paraphernalia for conducting a lottery drawing;" the second count charged that the defendants did, in a building described in the information, "set up type and plate for the purpose of printing and publishing lottery tickets and blank tickets, which are a part of the paraphernalia for conducting a lottery drawing;" and the third count charged that the defendants, being the owners of the Elite Printing Company, located in Tampa, Florida, "did knowingly permit, in said printing shop, the printing and publishing of lottery tickets and blank tickets, which are a part of the paraphernalia for conducting a lottery drawing."

It is urged, and very ably, by counsel for defendants that these counts fail to allege a crime under the terms of the above quoted section of our statutes. They contend that the crime is not the printing of the lottery tickets, or tickets susceptible of use in conducting a lottery, but rather the commission of those acts "in any way connected with any lottery drawing * * *."

To this view we cannot conform. Section 7668, C. G. L. 1927, is very broad in its scope. It was intended to stop this type of gambling in its inception. The intention of the Legislature seems very clear, namely, to make, among other things, the printing of lottery tickets a crime. A thorough examination of the said section reveals that the Legislative branch of our government sought to prevent gambling, by use of lottery drawings, by making it a crime for any person to participate in the preparation of the im-

plements necessary to the conducting of this type of unlawful activity.

A minute examination of the statute discloses that it is drawn in the disjunctive. That is, there are several items enumerated, any one of which constitutes a crime against the State of Florida. The statute specifically states that it shall be unlawful for. any person, firm or corporation to write, typewrite, print or publish "any lottery ticket * * *." The wording of the statute then continues, "*or* advertisement, circular, * * * or notice, of lottery prizes or drawings." Continuing, we again find the use of the disjunctive, *or*, "*or* any other matter or thing in any way connected with any lottery drawing, scheme or device." In other words, the statute, by giving credence to the accepted use of the English language, makes it a crime to print or publish (1) "Any lottery ticket" *or* (2) "advertisement, circular, bill, poster, pamphlet, list or schedule, announcement or notice, of any lottery prizes or drawings" *or* (3) "any other matter or thing in any way connected with any lottery drawing, scheme or device." See Bolian v. WeKiwa Ranch, 97 Fla. 180, 122 So. 559, Reynolds v. Reynolds, 113 Fla. 361, 152 So. 200.

It is true that we have held, and rightly so, under the previous section of our statutes (Section 7667, C. G. L. 1927), making it a crime to have possession of a lottery ticket, that to constitute an offense under the statute it is necessary to show the possession of the ticket and also that the ticket was one in a live lottery or a lottery yet to be played. Also, we have held that the indictment must allege both of these elements as it takes both to constitute the crime. See D'Alessandro v. State, 114 Fla. 70, 153 So. 96; State *ex rel.* Sweeting v. Chapman, 126 Fla. 231, 170 So. 736.

A reading of these cases will readily disclose the basis for our position therein. The State is not interested in prosecuting its citizens for the mere possession of lottery tickets, but is primarily interested in the prevention of gambling; and the possession of a live lottery ticket, and a live lottery ticket only, represents that interest in a gambling device which the State is seeking to quell. In the printing of lottery tickets a different situation arises. It is highly improbable that any person, in a sound state of mind, would print or set up the type to print tickets in a lottery that had already been played. By its very nature the printing of such tickets is a looking to the future. The very object of the printing is yet to be accomplished. The probability of gambling by means of a lottery is likewise still in the future and is still very much potentially alive. We reiterate, the State is primarily interested in the prevention of gambling; and, the prevention of the printing of the implements of such gambling is directed specifically at the evil sought to be prohibited. This statute is without the legislative power. See Purity Extract & Tonic Co. v. Lynch, 226 U. S. 192, 57 Law Ed. 184, 33 Sup. Ct. 44.

The defendants, through their able counsel, raise the further question of the necessity of alleging an intent, on the part of the defendants, that the lottery tickets printed be used in connection with the drawing or conducting of a lottery.

Having decided that the printing of lottery tickets itself is a crime, this matter of intent is disposed of more easily. It is well settled that as a general rule, acts prohibited by statute (statutory as distinguished from common law crimes) need not be accompanied by a criminal intent, unless such intent be specifically required by the statute itself, as the doing of the act furnishes such intent. See Wharton's

Criminal Law (11th Ed.), Vol. I, Section 143, p. 187; Mills v. State, 58 Fla. 74, 51 So. 278.

In our examination of the section of the statutes here under consideration we find nothing leading to the conclusion that the Legislature intended that a specific intent of the kind contended for was necessary. On the contrary, what we have said previously leads us to the conclusion that it intended to dispense with such an intent and make the doing of the act the crime. The ultimate object of this section of our statutes was to prevent lotteries, and as we have already stated the prevention of the printing or preparation of the implements of the trade is one of the effective means of prohibiting the ultimate wrong against the general public policy of the State. In other words the printer, by the act of printing the tickets, assists in the accomplishment of the evil the State seeks to eliminate— gambling by means of a lottery;— and, we hold that such printer need not have the intent that such tickets be used in any specific lottery, nor need he have knowledge that the tickets are in any way connected with a presently active lottery, so long as they be proved by the State to be *"lottery tickets."*

We have examined the information thoroughly, and, in view of what we have stated above, find it sufficiently alleges a crime against the State of Florida. Therefore, the order of the lower court, after hearing on petition for writ of *habeas corpus,* remanding defendants to the custody of the sheriff, was correct, and that order is hereby affirmed.

Affirmed.

TERRELL, C. J., WHITFIELD and THOMAS, J. J., concur.

BUFORD and CHAPMAN, J. J., dissent.

BUFORD, J. (dissenting).—The involved statute is quoted in the opinion prepared by Mr. Justice BROWN.

The information is in three counts. The first count charges: "that Philip La Russa, Nilo Lima, Tony Rodriguez and Louis Nunez, late of the County of Hillsborough aforesaid, in the State aforesaid, on the 16th day of January, in the year of Our Lord one thousand nine hundred and thirty-nine, with force and arms at and in the county of Hillsborough aforesaid, in a building located at 108 West Fortune Street, in the City of Tampa, State and county aforesaid, did unlawfully write, print and publish lottery tickets and blank tickets, which are a part of the paraphernalia for conducting a lottery drawing, to be used and distributed in the State of Florida. * * *"

This count does not charge the essential element of the offense, to-wit, that such tickets are "in any way connected with any lottery drawing, scheme or device" and fails to describe any lottery drawing, scheme or device in which such tickets are intended to be used.

The second count charges: "that Philip La Russa, Nilo Lima, Tony Rodriguez and Louis Nunez, late of the County of Hillsborough aforesaid, in the State aforesaid, on the 16th day of January, in the year of Our Lord one thousand nine hundred thirty-nine, with force and arms at and in the County of Hillsborough aforesaid, in a building located at 108 West Fortune Street, in the City of Tampa, State and county aforesaid, did unlawfully set up type and plate for the purpose of printing and publishing lottery tickets and blank tickets, which are a part of the paraphernalia for conducting a lottery drawing, to be used or distributed in the State of Florida, * * *."

This count does not make the material allegations that the alleged type or plate was intended to be used to print tickets to be used "in any way connected with any lottery, drawing, scheme or device" and fails to describe any lot-

tery, drawing scheme or device in which such tickets are intended to be used.

The third count charges: "that Philip La Russa, Nilo Lima, Tony Rodriguez and Louis Nunez, late of the County of Hillsborough aforesaid, in the State aforesaid, on the 16th day of January, in the year of our Lord one thousand nine hundred thirty-nine, with force and arms at and in the County of Hillsborough aforesaid, being then and there the owners of the Elite Printing Company, located at 108 West Fortune Street, in the City of Tampa, State and county aforesaid, did unlawfully and knowingly permit, in said printing shop, the printing and publishing of lottery tickets, and blank tickets, which are a part of the paraphernalia for conducting a lottery drawing to be used and distributed in the State of Florida * * *." This count is insufficient because of the same infirmity that is found in the second count.

The gravamen of the offense denounced by Section 7668 C. G. L. is that the tickets printed or to be printed with the type or plate set up are to be used in connection with a "lottery, drawing, scheme or device." It is just as necessary to allege and prove the lottery in which such tickets are to be used as it is to allege and prove the lottery constituting the basis for a prosecution for the offense of conducting a lottery. A newspaper publishing the New York Stock Exchange bond list publishes a part of the printing used in the lottery known as New York Bond but unless it is published with the intent that it shall be so used, no offense is committed.

The allegation and proof must be that the alleged tickets or other printed matter are in connection with a. lottery drawing, a lottery scheme or a lottery device and the allegation must advise and proof must be shown what drawing,

scheme or device such connection is with. See Potter v. State, 91 Fla. 938, 109 So. 91; Bradley v. State, 79 Fla. 651, 84 So. 677; *Ex Parte* Amos, 93 Fla. 5, 112 So. 289; Whitehurst v. State, 105 Fla. 595, 141 So. 878.

So the judgment should be reversed.

CHAPMAN, J., concurs.

## ON REHEARING

PER CURIAM.—This writ of error was taken to an order remanding plaintiffs in error to custody after hearing on a writ of habeas corpus.

It is well settled that habeas corpus cannot be used to take the place of a demurrer or motion to quash an indictment or information. The only question presented to us here is whether the information wholly failed to charge a criminal offense under the laws of this State.

In our former opinion and decision we reached the conclusion that the information, nor any of the counts thereof, did not wholly fail to charge a criminal offense. On rehearing, we adhere to that decision.

Even if the contention that the clause in the statute, "or any other matter or thing in any way connected with any lottery drawing, scheme or device" qualifies all the enumerated acts prohibited by the statute, be a well founded contention, this information is sufficient on habeas corpus to meet that contention. Thus in the count which charges the defendants with printing lottery tickets, it is immediately added, "which are a part of the paraphernalia for conducting a lottery drawing." The same clause is included in the other two counts. The statute says "in any way connected with any lottery drawing, scheme or device." Of course, as stated in our original opinion, the fact that the "drawing"

is to take place in the future would be no defense. Surely, no one would have tickets printed for a lottery wherein the "drawing" had already taken place.

We therefore adhere to our original judgment of affirmance of the order of the circuit court remanding plaintiffs in error to custody.

TERRELL, C. J., WHITFIELD, BROWN and THOMAS, J. J., concur.

BUFORD and CHAPMAN, J. J., dissent.